Filed 6/20/13  P. v. Meves CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROCKY RENO MEVES,<br><br>Defendant and Appellant. | F065386<br><br>(Super. Ct. No. RF006314A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Jonathan E. Berger, under appointment by the Court of Appeal, for Defendant Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Cornell, Acting P.J., Kane, J. and Peña, J.

## INTRODUCTION

Appellant Rocky Reno Meves contends the trial court erred in denying his motion to suppress evidence. Specifically, Meves asserts (1) the deputy sheriff was within the curtilage of his (Meves's) home, which was constitutionally protected; (2) the deputy unreasonably was within the curtilage; and (3) the subsequent search and seizure was unconstitutional. The trial court's factual finding that the deputy was not within the curtilage was supported by substantial evidence. Regardless, mere presence within the curtilage of a residence does not constitute an unlawful entry and unconstitutional search. The deputy reasonably was in the location from where he made his observations. We will affirm the trial court's denial of the suppression motion.

## FACTUAL AND PROCEDURAL SUMMARY

On March 28, 2012, Kern County Deputy Sheriff Darrin Clodt was in the small mining town of Johannesburg in rural Kern County. Clodt was in a patrol car with his partner, Deputy Sheriff Ralph Parsons. Clodt and Parsons were headed to 406 Goler Road in Johannesburg to serve a no-bail warrant on Ralph Brisbon. Clodt had extensive previous training in the recognition of individuals who were under the influence of controlled substances.

Goler Road is a dirt road and there are no dividing lines separating one property from another. When the deputies arrived at 406 Goler Road, Clodt looked to his right from the patrol car and saw Meves, who was standing about 20 yards from the patrol car. There was a house at the location. The area between the deputies and Meves was "desert type," with no lawn or fence between the deputies and Meves. Parsons testified that when Meves was first approached by the deputies, Meves was standing about 15 feet west of the residence on the property.

Clodt left the patrol car, crossed the desert-like area, and approached Meves, whom he knew from previous contacts. Clodt noticed Meves had his hand in his pocket, was shuffling back and forth, and was trembling. Meves spoke rapidly and was not able

2.

to stand still. Clodt formed the opinion that Meves was under the influence of a "central nervous system stimulant."

Clodt asked Meves to remove his hand from his pants pocket. When Meves did so, he produced a knife and handed it to Clodt. When Clodt began a patdown search, Meves admitted he had methamphetamine in his pocket. A subsequent search of Meves disclosed two packages of methamphetamine and a hypodermic syringe. The deputies placed Meves under arrest.

Meves was charged with possession of methamphetamine, using or being under the influence of methamphetamine, and possession of narcotics paraphernalia. It also was alleged that Meves had served a prior prison term and had suffered a prior strike conviction. Meves pled not guilty and denied the special allegations.

On May 3, 2012, Meves filed a motion to suppress the evidence pursuant to Penal Code section 1538.5.[1] The motion challenged the search as presumptively illegal because it was a warrantless search. The People filed opposition and argued that approaching Meves to talk to him about Brisbon's whereabouts while Meves was outdoors did not constitute a detention or unlawful entry, that after making contact Clodt had probable cause to arrest Meves, and that thereafter a lawful patdown and search incident to arrest were conducted.

The motion to suppress was heard on June 8, 2012. At the suppression hearing, three photographs of the scene where Meves was arrested were admitted into evidence. The photographs were marked defense exhibits A, B, and C. On October 29, 2012, this court granted a motion to augment the record on appeal to include these three photographs. The three photographs were of the property located at 406 Goler Road; however, according to the testimony at the suppression hearing, there were differences

---

[1]All further statutory references are to the Penal Code unless otherwise specified.

between what was shown in the photographs and the condition of the real property on March 28, 2012, when Meves was arrested.

Exhibit C shows what appears to be a swath of dirt road; to one side of the picture is a house with trees around it and a low stone fence that encloses the trees; the house is visible. A circle with an "X" inside is drawn on exhibit C, indicating the location where Meves was standing when Clodt approached him. The circled "X" mark indicates a location that is some distance from the house—outside of the area that is enclosed by the low stone fence—and is in an unimproved desert-like area. In the background of exhibit C is a corrugated metal fence with a "No Trespassing" sign on it; the fence is several feet in back of where the circled "X" is marked. Exhibits A and B depict what is on the other side of the corrugated fence. That area appears to be an area that is littered with junk and abandoned items.

Clodt testified that the corrugated metal fence depicted in the photographs was not present on March 28, 2012.

Parsons testified that what appeared to be a "No Trespassing" sign attached to the corrugated metal fence was not present on March 28.

Kyla Gambill, who lived with Meves at the time of his arrest, testified that on March 28, 2012, the residence at 406 Goler Road was fenced on three sides, but there was no fence between the roadway and where Meves was detained. Gambill also testified that a metal gate and a wooden gate shown in the photographs were not present on March 28.

The trial court determined from the testimony and a review of the exhibits that it appeared "the area where the deputy approached [Meves], minus the metal fence that did not exist at the time, is wide open to the street and it's a continuous dirt area that goes all the way from the street into an area that looks somewhat like a junkyard." The trial court found that the deputies were contacting Meves on an unrelated matter pertaining to a warrant for an acquaintance of Meves's, that once contact with Meves was made

4.

symptoms of being under the influence of a controlled substance were noted, and that there was no violation of the law in the arrest and search.

After the denial of the suppression motion, Meves pled no contest to possession of methamphetamine and admitted the prior prison term. The trial court dismissed the prior strike allegation, suspended imposition of sentence, and placed Meves on formal probation for three years, on condition he serve one year in county jail.

## DISCUSSION

Meves contends the trial court erred in denying his suppression motion. Specifically, he contends the deputies entered the constitutionally protected curtilage of his residence; thus, any observation of symptoms indicating he was under the influence of a controlled substance was made from a position the deputies could not lawfully occupy. Meves is mistaken.

### *Standard of Review*

Section 1538.5 provides in relevant part that a defendant may move for the return of property or to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure if the search or seizure without a warrant was unreasonable.

""""A proceeding under … section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court *sitting as a finder of fact*.' [Citation.]" [Citation.] … In such a proceeding the power to judge the credibility of witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence. The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. Although that issue is a question of law, the trial court's conclusion on the point should not lightly be challenged by appeal or by petition for extraordinary writ. Of course, if such review is nevertheless sought, it becomes the

5.

ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.'  [Citation.]"  (*People v. Green* (1996) 46 Cal.App.4th 367, 372.)

*Analysis*

Meves challenges the trial court's factual finding that the deputies did not impermissibly enter the curtilage of his residence.  Meves misconceives the nature of the doctrine of curtilage.

First, curtilage contemplates an area that shares the same expectation of privacy as does the interior of the home to which it relates.  (*United States v. Dunn* (1987) 480 U.S. 294, 300 (*Dunn*).)  The "central component of [curtilage is] whether the area harbors the 'intimate activity associated with the "sanctity of a [person's] home and the privacies of life."'  [Citations.]"  (*Id.* at p. 300.)  A road or driveway to a home open to the public is not within the curtilage of a home.  (*U.S. v. Evans* (7th Cir. 1994) 27 F.3d 1219, 1228-1229 [open driveway leading to garage from public street not private]; *United States v. Ventling* (8th Cir. 1982) 678 F.2d 63, 65-66 [a driveway and portion of the yard immediately adjacent to the front door of a home cannot be considered to be out of public view]; *U.S. v. Rodgers* (11th Cir. 1991) 924 F.2d 219, 221, fn. 3 [a pathway that leads from a driveway to the front door of a home is not within the curtilage of the home]; *United States v. Humphries* (9th Cir. 1980) 636 F.2d 1172, 1179 [no expectation of privacy where an automobile was parked on an unenclosed driveway open to view from the street].)

Second, curtilage is the land immediately surrounding and associated with the home; curtilage does not necessarily extend to a property's boundary line.  (*Oliver v. United States* (1984) 466 U.S. 170, 180.)  The area beyond the curtilage is "open fields" that government agents may enter without regard to the constraints imposed by the Fourth Amendment.  (*Oliver,* at pp. 179-180.)

Here, the deputies had an unobstructed view of Meves while in their patrol car on a public street. Meves was standing in an area that was desert like; he was some distance from his residence, the trees, and the area that was enclosed by the stone fence on March 28, 2012. Meves was visible from the public roadway.

The United States Supreme Court in *Dunn* rejected a contention a barn was within the curtilage of the residence. (*Dunn, supra*, 480 U.S. at pp. 300-303.) In addition, that court rejected the defendant's contention he possessed an expectation of privacy, independent from his home's curtilage, in the barn and its contents. (*Id.* at p. 301.) We similarly reject Meves's contention that the desert-like junk yard area of his property was within the curtilage or that he had any expectation of privacy while standing in that area. The area where Meves was standing was not adjacent to or near the home; it was not at that time enclosed or shielded by any fence; the area's use was not tied to the home itself, rather, it appeared to be a desert area, a portion of which was littered with junk; and there were not any "No Trespassing" signs in place on March 28, 2012.

We conclude the trial court's factual finding that the area in which Meves was standing was outside the curtilage was supported by substantial evidence.

Moreover, the presence of an officer within the curtilage of a residence does not automatically amount to an unconstitutional invasion of privacy. It must be determined under the facts of each case just how private the particular observation point actually is. Police with legitimate business may enter areas of the curtilage that are impliedly open, such as access routes to the house. In doing so, they are free to keep their eyes open. An officer is permitted the same license to intrude as a reasonably respectful citizen. A substantial and unreasonable departure from such an area, or a particularly intrusive method of viewing, however, will exceed the scope of the implied invitation and intrude upon a constitutionally protected expectation of privacy. What is reasonable cannot be determined by a fixed formula. Rather, it must be based on the facts and circumstances of each case. (*People v. Thompson* (1990) 221 Cal.App.3d 923, 943 (*Thompson*).)

The Fourth Amendment protection of the home never has been extended to require law enforcement officers to shield their eyes when passing by a home on a public street. Nor does the mere fact an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible. What a person knowingly exposes to the public, even in his own home, is not a subject of Fourth Amendment protection. (*People v. Camacho* (2000) 23 Cal.4th 824, 829-831 (*Camacho*).)

Even if the area in which Meves was standing were part of the curtilage, the deputies legitimately could approach him where he stood. The area was not shielded from the road; Meves could have no reasonable expectation of privacy where he stood since the area was visible to the public; and Clodt's approach was open and direct and for a legitimate purpose. (*Thompson, supra*, 221 Cal.App.3d at p. 943.) What a person knowingly exposes to the public is not subject to Fourth Amendment protection. (*Camacho, supra,* 23 Cal.4th at pp. 829-831.)

A police officer who makes an uninvited entry onto private property does not per se violate the occupant's Fourth Amendment right of privacy. "Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof—whether the questioner be a pollster, a salesman, or an officer of the law." (*Davis v. United States* (9th Cir. 1964) 327 F.2d 301, 303.) This essentially is what Clodt did when he approached Meves while Meves was standing outside his home in an area open to public view.

Clodt lawfully entered onto the property to speak to Meves. Here, Clodt determined from observing Meves that Meves appeared to be under the influence of a controlled substance, which gave Clodt probable cause to arrest Meves for a

8.

misdemeanor violation of Health and Safety Code section 11550, subdivision (a). The methamphetamine and paraphernalia in Meves's possession were uncovered as a result of a search incident to a lawful arrest. (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1076-1077.)

### *Conclusion*

We conclude the trial court's factual finding that the area in which Meves was standing was outside the curtilage was supported by substantial evidence. (*People v. Green* (1996) 46 Cal.App.4th 367, 372.) Under California law, ""it is 'the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.'" [Citation.]' [Citation.]" (*People v. Gallegos* (1997) 54 Cal.App.4th 252, 261-262.) Clodt's entry onto the property to speak to Meves was lawful and the resulting arrest, search, and seizure of the contraband were reasonable and did not violate the Fourth Amendment.

## DISPOSITION

The judgment is affirmed. The request for judicial notice filed October 4, 2012, is denied.[2]

---

[2]Meves asked this court to take judicial notice of two Google maps pursuant to Evidence Code section 452, subdivision (h). We decline to do so because the accuracy and relevancy of the maps are reasonably subject to dispute. There is nothing to indicate the maps are true and accurate representations of the property on the relevant date of March 28, 2012, and, as we know from the testimony at the suppression hearing, the physical appearance of the real property was altered after Meves was arrested.