Filed 8/13/14  P. v. Harris CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>ANTOINE W. HARRIS,<br><br>　　　　Defendant and Appellant. | A137390<br><br>(Solano  County<br>Super. Ct. No. FCR286753) |

　　　　Defendant Antoine W. Harris, a prior felon, was convicted, following a jury trial, of unlawfully possessing a firearm and ammunition (former Pen. Code, §§ 12021, subd. (a)(1)), 12316, subd. (b)(1); (now §§ 29800, subd. (a) & 30305, subd. (a), respectively)).[1] On appeal, he asserts the firearm and ammunition, found in his car parked on a public street, were unconstitutionally seized and should have been suppressed.  He did not, however, make this argument in the trial court and thus has forfeited it on appeal.  Even assuming it is properly before us, however, the observation of defendant's car and seizure of the evidence did not contravene Fourth Amendment proscriptions.  We therefore affirm.

<b>BACKGROUND</b>

　　　　Shortly after midnight on August 6, 2011, Fairfield Police Officer Jausiah Jacobsen was investigating a stolen vehicle and hit-and-run incident.  Patrolling a few blocks from where the stolen vehicle was later found, Jacobsen was "[l]ooking for any

---

　　　　[1] All further undesignated statutory references are to the Penal Code unless otherwise indicated.

other evidence, suspect vehicle, anybody that saw what happened." He spotted defendant in a Dodge Durango parked along the street, pulled up behind the vehicle, and flipped on a spotlight to illuminate the area. He got out and approached the Durango to inquire if defendant might have any useful information. Before Jacobsen reached the vehicle, defendant got out and went into a nearby residence.

Jacobsen continued to walk up to the driver's side door of the Durango and used a flashlight to see if anyone else was inside. No one was, but he saw a gun wedged between the driver's seat and center console. "[E]verything except the end of the barrel" was showing. "[T]he grip, the trigger assembly area, the action area," and a magazine inserted into the magazine well were all visible. Jacobsen concluded he might well be witnessing a violation of criminal statutes governing loaded and concealed weapons and wanted to seize and secure the weapon.[2] But the Durango was locked.

At this point, Jacobsen requested backup, and when other officers arrived, he attempted to contact the residents of the house defendant had entered. He could see several people, including defendant, standing in the doorway and called out to them, asking them to come outside and talk with him. They shut the door instead. Eventually, a friend of defendant's exited the residence but refused to speak to the officers and returned inside. She exited a second time and began walking to the Durango with car keys. One of the backup officers detained her before she reached the vehicle. Jacobsen took the keys, and he and the other officer opened the vehicle and seized the gun, which was loaded with one round in the chamber and six in the magazine.

Jacobsen then placed a telephone call to a number provided by the woman, and spoke with a gentleman who said he was the owner of the house. Jacobsen asked him to come outside, which he did. Jacobsen told him his concerns about the gun and stated he

---

[2] For example, it is unlawful to carry a loaded firearm in a vehicle while in a public place or public street. (§ 25850, subd. (a).) This statute further provides: "to determine whether or not a firearm is loaded . . . peace officers are authorized to examine any firearm . . . in a vehicle while in any public place or on any public street . . . Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section." (§ 25850, subd. (b).)

wanted to arrest defendant. The homeowner said his grandson was in the house and the police needed to be careful. He also said he did not know defendant, who had entered the house and was hiding in the bathroom. According to Jacobsen, the homeowner additionally gave consent to enter the house. The homeowner, however, testified otherwise, and claimed defendant had arrived with his daughter and was having car trouble, and he denied saying defendant was hiding in the house.

Jacobsen entered the house, found defendant and arrested him. A subsequent search of the Durango yielded defendant's identification card and a white chunky substance in the console, which contained cocaine base.

The Solano County District Attorney charged defendant with one count of possessing a firearm as a felon (former § 12021, subd. (a)(1)), one count of unlawfully possessing ammunition (former §12316 subd. (b)(1)), and one count of possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1.)

At the preliminary hearing, defendant made a motion to suppress all tangible and intangible evidence seized pursuant to defendant's detention and arrest in the residence, "including but not limited to: officer's observations, defendant's statements, text messages, any real or intangible evidence, and any and all fruits of the search." Defendant particularly focused on the statements and text messages. According to defendant, as an invited guest of the owner of the residence, he had a legitimate expectation of privacy inside the house. His written motion made no mention of the car, gun or ammunition.

The prosecution filed opposition defending the entry into and search of the house, and additionally asserting the gun was properly seized because it was in plain sight in the parked Durango and Officer Jacobsen reasonably believed its presence in the vehicle might be in violation of firearms laws. Defendant filed no written reply.

At the conclusion of the hearing, defense counsel argued for suppression based on the owner's testimony he had not consented to a search of the house. Counsel finished: "And I would argue that the search of the car was the fruit of the—was the fruit of the

illegal contact in the first place, which seems also that it was not justified under the circumstances of the offense that the officer was investigating."

The magistrate then asked: "What about the observation of the gun prior to contact with the people in the home?" Counsel replied: "Well, I think that the observation of the gun—I mean, if, in fact, it was in plain view in the place where the officer had a right to be, then I think that, you know, I think that arguably that—they would have been able to see the gun in plain view, if it was as they say it was . . . at that point, . . . they should have gotten a warrant to go inside the house . . . to question them further about the legality, or lack thereof, of the gun."

The magistrate sought further clarification: "I'm trying to figure out what you're seeking to suppress, since independently the officer saw the gun and can seize the gun." Defense counsel responded: "Well, what I'm seeking to suppress is, I guess, two-fold. If it's true that the gun was seen in plain view, and even if this was a consensual contact, although I find that suspect, if it was, in fact—well, it was not a detention at that point. That's clear. And then if the officer saw it in plain view, that is what it is. [¶] . . . [¶] [S]o even if the gun is not suppressible, I would argue that his statements and cocaine should be suppressed." The magistrate then denied the motion to suppress.

Before trial defendant made a section 995 motion to dismiss. In his moving papers, he again argued he was the victim of an unconstitutional detention while inside the residence. The prosecution opposed the motion, repeating its position the entry and search of the house was lawful and also repeating its position the gun was in plain view on the Durango and properly subject to seizure on that ground. At the hearing on the motion, defense counsel again focused on the entry and search of the residence and the issue of consent, making no mention of the vehicle or gun. The trial court denied the motion, and the case went to the jury.

The jury convicted defendant of the two firearm charges, and the trial court subsequently sentenced him to seven years in prison.

4

## A. *Forfeiture*

Unlike in the trial court, defendant now focuses on Officer Jacobsen's initial inspection of the inside of the Durango and seizure of the gun, both of which occurred before the entry into and search of the residence. He contends Jacobsen looked into the vehicle without reasonable suspicion, Jacobsen's use of a flashlight was a trespass of defendant's property under *United States v. Jones* (2012) 132 S.Ct. 945, and the incriminating nature of the gun was not readily apparent. The Attorney General maintains defendant forfeited these arguments by not raising them in the trial court in either his motion to suppress or dismissal motion.

In *People v. Williams* ( 1999) 20 Cal.4th 119 (*Williams*), our Supreme Court examined the specificity with which a defendant must make a motion to suppress evidence pursuant to section 1538.5. "[W]hen the basis of a motion to suppress is a warrantless search or seizure, the requisite specificity is generally satisfied, *in the first instance*, if defendants simply assert the absence of a warrant and make a prima facie showing to support that assertion. Of course, if defendants have a specific argument other than the lack of a warrant as to why a warrantless search or seizure was unreasonable, they must specify that argument as part of their motion to suppress and give the prosecution an opportunity to offer evidence on the point." (*Williams*, at p. 130, italics omitted.) Once the defendant meets the foregoing specificity requirement, "[t]he prosecution . . . has the burden of proving some justification for the warrantless search or seizure . . . ." (*Id.* at p. 136.)

The court stated further, however, "once the prosecution has offered a justification for a warrantless search or seizure, defendants must present any arguments as to why that justification is inadequate. [Citation.] Otherwise, defendants would not meet their burden under section 1538.5 of specifying why the search or seizure without a warrant was 'unreasonable.' This specificity requirement does not place the burden of proof on defendants. [Citation.] [T]he burden of raising an issue is distinct from the burden of proof. The prosecution retains the burden of proving that the warrantless search or

5

seizure was reasonable under the circumstances. [Citations.] But, if defendants detect a critical gap in the prosecution's proof or a flaw in its legal analysis, they must object on that basis to admission of the evidence or risk forfeiting the issue on appeal. (*Williams, supra*, 20 Cal.4th at p. 130.) "Defendants cannot . . . lay a trap for the prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked." (*Id.* at p. 131.) "Defendants who do not give the prosecution sufficient notice of [the] inadequacies [in the prosecution's proposed justification for a warrant-less search or seizure] cannot raise the issue on appeal." (*Id.* at p. 136.) " 'This is an elemental matter of fairness in giving each of the parties an opportunity adequately to litigate the facts and inferences relating to the adverse party's contentions.' " (*Ibid.*)

Here, defendant never argued in either his motion to suppress or dismissal motion that Officer Jacobsen lacked reasonable suspicion to look into the Durango. Nor did he advance any such argument at the hearings on either motion. He likewise never took issue with Jacobsen's use of a flashlight. Nor did he challenge Jacobsen's conclusion that on seeing the gun, he believed he might be observing violations of the firearms laws. Rather, both defendant's motion to suppress and dismissal motion focused on the entry into and warrantless search of the residence. He also made no response to the prosecution's "plain view" argument about the gun. In fact, at the suppression hearing, defense counsel essentially agreed with the trial court's view there was no problem with the seizure of the gun, stating: "it was not a detention at that point. That's clear. And then if the officer saw it in plain view, that is what it is."

Defendant nevertheless maintains he did not forfeit arguments about the seizure of the gun, citing *People v. Smith* (2002) 95 Cal.App.4th 283 (*Smith*). In *Smith*, police stopped the defendant for driving without a tail light. On contact, he appeared to be under the influence of methamphetamine and was arrested. The officers, without permission, then searched his car, including the trunk, where they found methamphetamine and related paraphernalia. (*Id.* at p. 288.) The prosecution opposed the defendant's motion to suppress on the ground the search of the trunk was a lawful "inventory search" and because there was probable cause the car contained evidence of a

crime. (*Id.* at pp. 288–289.) As to the inventory search, the prosecution's argument was summary and did not "set forth the specific requirements for" such a search or demonstrate how they were met. (*Id.* at p. 289.) The defendant filed a reply brief, but did not challenge the inventory search rationale. Rather, he maintained the arrest was unlawful, so any subsequent search was tainted. (*Ibid.*) The trial court concluded defendant's arrest was lawful, but the police lacked probable cause to search the trunk. Nevertheless, because the defendant had not challenged the validity of the search as an inventory search, the court assumed it was lawful and denied the motion to suppress. (*Id.* at p. 291.) The Court of Appeal reversed, pointing out the prosecution retains the burden of proving a justification for a warrantless search, regardless of whether the defendant addresses the justification in a reply brief. (*Id.* at p. 300.)

*Smith* is not on point. In that case, the defendant's motion gave the prosecution clear notice of the intrusion complained of—the search of the trunk following his arrest. (*Smith*, *supra*, 95 Cal.App.4th at p. 288.) Moreover, at the hearing, the defendant raised the particular issue he later raised on appeal, the necessity for the prosecution to prove a valid inventory search. (*Id.* at p. 291.) Here, in contrast, defendant never challenged Officer Jacobsen's inspection of his parked car, only the subsequent entry into and search of the residence. Indeed, at the hearing, defendant not only did not take issue with the prosecution's "plain view" defense of the seizure of the gun, he essentially conceded the theory as to the gun. In short, defendant made no response as to Officer Jacobsen's view into the Durango and his observation of the gun, and thus failed to elucidate any of the issues he now claims compromised the seizure of the loaded handgun. Accordingly, he has waived the issues on appeal. (See *Williams, supra*, 20 Cal.4th at pp. 131, 136.)

## B. *Merits of Suppression Arguments*

Even had defendant not forfeited the arguments he now makes on appeal, we would nonetheless reject them.

When a defendant moves to suppress and then later moves to dismiss on the same grounds under section 995, this court directly reviews "the determination of the magistrate at the preliminary hearing," in " 'effect disregard[ing] the ruling of the

superior court.' " (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529.) "We must draw all presumptions in favor of the magistrate's factual determinations, and we must uphold the magistrate's express or implied findings if they are supported by substantial evidence." (*Ibid.*) Ultimately, however, "[w]e judge the legality of the search by 'measur[ing] the facts, as found by the trier, against the constitutional standard of reasonableness' " and in this regard "we exercise our independent judgment." (*Ibid.*)

Although the Fourth Amendment protects against warrantless searches and seizures (U.S. Const. Amend. 4), "observations of things in plain sight made from a place where a police officer has a right to be do not amount to a search in the constitutional sense." (*Lorenzana v. Superior Court* (1973) 9 Cal.3d 626, 634; *People v. Chavez* (2008) 161 Cal.App.4th 1493, 1500–1501 (*Chavez*) [not a search when officer observed gun from publicly-accessible walkway by peering over defendant's fence]; *Harris v. United States* (1968) 390 U.S. 234, 236 ["objects falling in plain view . . . are subject to [search and] seizure and may be introduced in evidence"]; *United States v. Martin* (8th Cir. 1986) 806 F.2d 204, 206 ["As for the observation of the gun parts in plain view on the front seat of the truck, we hold that the agent's conduct was not a search within the meaning of the Fourth Amendment. The agent was standing on the curb abutting a public street. Appellees' truck was parked on that public street. The agent testified that he could see clearly through the windows and that they were not covered in any way."].)

In addition, an officer may seize contraband, such as a gun, from a vehicle if "the[] incriminating character [of the item] is immediately apparent . . . ." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1119.)

Thus, defendant's first complaint, that Officer Jacobsen did not have reasonable suspicion of any unlawful activity before looking inside the Durango, is beside the point. The very purpose of the plain view doctrine is to excuse the need for suspicion or probable cause before observations can be made. (*Arizona v. Hicks* (1987) 480 U.S. 321, 325 [the "lack of relationship [to then-engaged in activity] *always* exists with regard to action validated under the 'plain view' doctrine"]; see *id.* at p. 328 ["merely looking at what is already exposed to view, without disturbing it—is not a 'search' for Fourth

Amendment purposes, and therefore does not even require reasonable suspicion"]; see also *United States v. Williams* (3d. Cir. 2005) 413 F.3d 347, 354 ["The police could approach the parked van without any reasonable suspicion, just as they could approach an individual standing on the street without any reasonable suspicion . . . ."].)

Nor did Officer Jacobsen's use of a flashlight to illuminate the interior of the publicly parked Durango transform Jacobsen's otherwise ordinary observation into an unconstitutional search. (*Chavez, supra*, 161 Cal.App.4th at p. 1501 ["officer's use of a flashlight to improve his vision does not affect the plain view of the revolver"].) "Looking through the window of an automobile is not unlawful. Observation of that which is in view is lawful, whether the illumination is daylight, moonlight, lights within the vehicle, lights from street lamps, neon signs or lamps, or the flash of lights from adjacent vehicles [citation]; that the light comes from a flashlight in an officer's hand makes no difference." (*People v. Superior Court* (*Mata*) (1970) 3 Cal.App.3d 636, 639; see also *United States v. Lee* (1927) 274 U.S. 559, 563 ["use of a searchlight [to detect rum on ship's deck] is comparable to the use of a marine glass or field glass. It is not prohibited by the Constitution," nor is it a search].)

Use of a flashlight also did not give rise to a trespass under *United States v. Jones, supra*, 132 S.Ct. 945, in which the Supreme Court concluded the unauthorized installation of a GPS tracking device would constitute a physical occupation of private property thus generally triggering the necessity of procuring a warrant. However, under the physical trespass theory, "[a]ids such as flashlights or binoculars raised no great problem." (*United States v. Solis* (9th Cir. 1976) 536 F.2d 880, 882.) Flashlights are distinguishable from "the use of sophisticated modern mechanical or electronic devices." (*Ibid.*)

Finally, there is no merit to defendant's contention the incriminating nature of the gun was not sufficiently apparent to allow its seizure. Probable cause is defined as "a 'practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " (*People v. Allen* (2000) 78 Cal.App.4th 445, 450, quoting *Illinois v. Gates* (1983)

9

462 U.S. 213, 238.)  Officer Jacobsen was standing at a lawful vantage point, in a public street, when he observed the gun, and he could see "everything except for the end of the barrel," including the inserted magazine suggesting the gun was loaded.  That the gun was "wedged" and might have been considered "concealed" did not affect what Jacobsen otherwise saw.  He explained, "[i]f [a gun is] in a motor vehicle, it's required to be unloaded.  It has to be secured in some type of storage container. . . .  And the ammunition has to be separate from it."  In short, defendant is simply quarreling with Jacobsen's testimony, which the trial court credited and which we may not revisit or disregard on appeal.  Jacobsen's testimony provided ample evidence to conclude he had a reasonable basis for believing the gun might be in the vehicle in violation of firearms laws.

In sum, even if defendant had preserved the issues he now raises of appeal, none has merit.  The gun and its ammunition were validly seized, and his motions to suppress and for dismissal were properly denied.

### DISPOSITION

The judgment is affirmed.

_____
Banke, J.

We concur:

_____
Humes, P. J.

_____
Dondero, J.

10