Filed 4/1/16  P. v. Dunker CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KAI DUNKER,<br><br>    Defendant and Appellant. | D068116<br><br><br>(Super. Ct. No. SCN329902) |

APPEAL from an order of the Superior Court of San Diego County, Carlos O. Armour, Robert J. Kearney and Richard R. Monroy, Judges.  Affirmed.

Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Kai Dunker pleaded guilty to manufacturing a controlled substance and was granted three years' formal probation.  (Health & Saf. Code, § 11379.6, subd. (a).)

Before pleading guilty, he sought to suppress evidence he alleged was illegally obtained. On appeal, Dunker challenges the trial court's orders denying motions to quash the search warrant and suppress evidence. We are not persuaded by his arguments and affirm the orders.

FACTUAL AND PROCEDURAL HISTORY

In 2013, the Carlsbad Police Department received two anonymous tips that marijuana was being grown at an apartment complex located at 2270 Avenida Magnifica. On January 31, 2014, Carlsbad Police Deputy Richards and Officer Boyd went to the apartment complex to investigate the tips. The apartment complex consists of an uncovered parking lot and multiple buildings; the apartment in question was in a building with 21 units located on three floors, each floor having seven apartments. The entrance to the parking lot has a gate with a sign posted "Private Residential Community" and "No Solicitation or Distribution of Materials." The parking lot is level with the second floor of apartments, and has an uncovered walkway connecting the apartments to the parking lot. The hallway of the second floor apartments is covered, but is open to the outside and can be seen from the parking lot.

When the officers arrived, they drove into the parking lot through the open gate. Boyd then got out of the vehicle and walked across the walkway to the open hallway of the second floor apartments. In the hallway on the second floor, Boyd noticed the faint smell of marijuana, but could not identify its exact source. Before leaving the parking lot, the officers looked up the registration of cars in the parking lot and found a car registered to Kai Dunker for apartment M.

2

In early March 2014, Richards returned to the apartment complex with a detective. They drove in the open gate and parked, and Richards walked alone across the walkway to the second floor apartments. He felt warm air coming from an open window directly adjacent to the door to apartment M. Richards saw a fan, located between window blinds and the screen in the apartment, blowing warm air from inside the apartment into the hallway. He placed his nose approximately six inches from the window to apartment M and smelled a strong odor of marijuana. Richards then went to each apartment on the second floor to smell around the doors and windows, confirming the smell was coming from apartment M. Prior to applying for a search warrant, Richards checked Dunker's vehicle registration, which still showed an address for apartment M. Using this information, Richards obtained a search warrant for apartment M.

Several days later, Richards, along with other officers, presented the search warrant to the leasing office of the apartment complex and a leasing agent provided them with a key to apartment M. The officers knocked on apartment M's door and stated they were there to execute a search warrant. No one answered, and the officers used the key to enter the apartment. The officers found Dunker and three other people in the two-bedroom apartment. The officers also discovered 33 marijuana plants and evidence of an illegal growing operation. During the execution of the warrant, Dunker admitted to manufacturing and selling marijuana and butane honey oil. Dunker was arrested and subsequently charged with manufacturing a controlled substance (Health & Saf. Code, § 11379.6, subd. (a)) and possession of marijuana for sale. (Health & Saf. Code, § 11359.)

3

Before trial, Dunker filed a motion to quash the search warrant and a motion to suppress evidence under Penal Code section 1538.5. At the close of the preliminary examination, the trial court denied the motions. Dunker filed subsequent unsuccessful motions to quash and suppress. He eventually pleaded guilty to manufacturing a controlled substance and was sentenced to three years' probation. Dunker appeals the orders denying the motions to quash the warrant and suppress evidence.

DISCUSSION

Dunker contends the trial court erred in denying his motion to suppress because the observations made by officers outside his apartment violated his rights under the Fourth Amendment to the United States Constitution and did not support the basis of a search warrant. Dunker asserts that he had a reasonable expectation of privacy in the hallway outside his apartment because it is part of a private residential community. Dunker also argues the police trespassed onto private property for the sole purpose of conducting a search, which exceeded the officers' implied license under *Florida v. Jardines* (2013) __U.S.__ [133 S.Ct. 1409, 185 L.Ed.2d 495].

The standard of review of a trial court's ruling on a motion to suppress is well established. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) On appeal, we examine whether the trial court's factual findings are supported by substantial evidence. (*Ibid.*; *People v. Camacho* (2003) 23 Cal.4th 824, 830 (*Camacho*).) We then exercise our independent judgment in determining whether a search occurred and was reasonable under the Fourth Amendment. (*Camacho,* at p. 830.)

4

The Fourth Amendment is implicated when police conduct amounts to a search or a seizure. (*Camacho*, *supra*, 23 Cal.4th at pp. 831-832.) An area is constitutionally protected by the Fourth Amendment when a person has a subjective expectation of privacy in that area and society recognizes that expectation as reasonable. (*Camacho,* at p. 831.) The Fourth Amendment protects the area immediately surrounding the home, known as curtilage, only when a person has a reasonable expectation of privacy in the area. (*United States v. Dunn* (1987) 480 U.S. 294, 300; *Boyd v. United States* (1886) 116 U.S. 616, 630.)

The ultimate question for determining whether an area is protected as curtilage is if the area "is so intimately tied to the home itself" that it should receive the same Fourth Amendment protection as the home. (*United States v. Dunn, supra*, 480 U.S. at p. 301.) The factors relevant for making this determination are "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." (*Ibid.*) If the area outside the home is not curtilage, then it is a public area or open field that has no objectionably reasonable expectation of privacy, and the public, including police officers, may lawfully be present. (*Id.* at pp. 304-305.)

The Fourth Amendment does not protect common areas in multi-unit complexes if the area is expressly or impliedly open to the public. (*Camacho, supra,* 23 Cal.4th at p. 832; *Lorenzana v. Superior Court* (1973) 9 Cal.3d 626, 631; *People v. Chavez* (2008) 161 Cal.App.4th 1493, 1500.) The existence of public hallways or entryways exposes the

5

area to the public and creates an implied permission for the public to enter, negating a tenant's expectation of privacy in the area. (*Camacho,* at p. 832; *Lorenzana*, at p. 629.) Further, a trespass on private property is not dispositive for determining a Fourth Amendment violation. (*United States v. Karo* (1984) 468 U.S. 705, 712-713; *Chavez*, at pp. 1499-1500.)

The trial court properly denied Dunker's motions to quash and suppress. Dunker did not have a reasonable expectation of privacy in the area outside his apartment. (See *People v. Berutko* (1969) 71 Cal.2d 84, 88, 93 [finding no Fourth Amendment violation when officers used a common walkway to peer inside the defendant's apartment window].) The officers smelled marijuana emanating from Dunker's apartment while in a common walkway for tenants and their visitors. From this location, the officers were entitled to observe anything within their view without offending the Fourth Amendment because Dunker had no reasonable expectation of privacy in this area. The gate to the parking lot was open each time the officers made their observations. Dunker could not have prevented persons from using the open hallway, and therefore could not prevent the area from observation. The existence of the sign on the gate at the entrance of the apartment complex is not alone sufficient to create curtilage in the area. (See *Oliver v. United States* (1984) 466 U.S. 170, 182 [finding that the existence of warning signs do not itself create a legitimate expectation of privacy].) The officers traversed from the open gate to the open hallway outside Dunker's apartment. The officers were invited to take this path because the public is deemed to be invited to do so. Therefore, the officers

had a right to be physically present, and smell the hallway and the area outside Dunker's apartment.

Dunker's reliance on *Florida v. Jardines, supra,* 133 S.Ct. 1409 to support his assertion that the search that led to the warrant was unlawful is misplaced. In *Jardines*, the Supreme Court determined police could not enter curtilage for the sole purpose of conducting a search. (*Id.* at pp. 1416-1417.) Absent intent to conduct a search, however, the police have an implied license to come to a resident's front door, just like any other private citizen. (*Id.* at p. 1416; *Kentucky v. King* (2011) 563 U.S. 452, 469.) Here, the hallway, where the officers smelled marijuana, is not properly characterized as protected curtilage. Rather, because it is a common hallway open to the public, the officers were lawfully present under an implied license. (*People v. Berutko, supra,* 71 Cal.2d at pp. 88, 93.)

## DISPOSITION

The orders are affirmed.

McDONALD, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.

7