Filed 12/14/21  P. v. Stolz CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RYAN CRAIG STOLZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B311891<br>(Super. Ct. No. 19F-08775)<br>(San Luis Obispo County) |

Ryan Craig Stolz appeals from the judgment after pleading no contest to possession of an assault weapon (Pen. Code, § 30605, subd. (a)).  The trial court suspended imposition of sentence and ordered him to serve two years of formal probation.  Stolz contends the judgment should be reversed because the court erroneously denied his motion to suppress evidence.  We agree, and reverse.

FACTUAL AND PROCEDURAL HISTORY

Sergeant Matt Chesson received a report of a domestic disturbance between two people at Stolz's residence, one of whom had been heard screaming that they needed to go to the hospital.  The sergeant was also told that police had previously

responded to the residence after Stolz allegedly pointed a gun at someone. Sergeant Chesson had previously gone to the same residence in response to a reported drug overdose.

Sergeant Chesson saw a truck leave Stolz's residence as he approached. He and another officer continued to the residence as others pursued the truck. When they arrived, Sergeant Chesson knocked on the front door and rang the doorbell, but received no response. The other officer went around the exterior of the residence and saw a woman lying in a bedroom. She appeared to be breathing, but did not respond when the officer called out.

While he waited at the front door, Sergeant Chesson received word that Stolz had been detained. He then went to assist his partner and the unresponsive woman. As he passed by the garage, he saw a large safe inside the garage with its door slightly ajar. He could not see into the safe, however, so he entered the garage and opened the door to the safe. Inside were various firearms and high-capacity magazines.

Prosecutors charged Stolz with possession of an assault weapon and three other charges related to the contents of the safe. Stolz moved to suppress the evidence supporting these charges, arguing that the search of his safe and seizure of its contents ran afoul of the Fourth Amendment. Prosecutors countered that the "combination of a life-threatening potential emergency, along with an officer safety issue" justified the search and seizure. The trial court denied Stolz's motion. He then pled no contest to the possession of an assault weapon in exchange for dismissal of the other charges and a two-year probation term.

DISCUSSION

Stolz contends the judgment should be reversed because Sergeant Chesson's search of the safe in his garage and seizure of its contents violated the Fourth Amendment. We agree.

"In California, issues relating to the suppression of evidence . . . are reviewed under federal constitutional standards." (*People v. Troyer* (2011) 51 Cal.4th 599, 606 (*Troyer*).) Under the Fourth Amendment, "a warrantless entry into a home is presumptively unreasonable." (*Troyer*, at p. 606.) Prosecutors thus had "the burden of establishing that . . . [an] exception to the warrant requirement justified the entry" into Stolz's home. (*Ibid.*) In reviewing the trial court's determination that prosecutors met that burden, we defer to the court's factual findings if supported by substantial evidence. (*People v. Tully* (2012) 54 Cal.4th 952, 979.) We then exercise our independent judgment to determine whether the court's ruling on the suppression motion was correct. (*Ibid.*)

*Emergency aid exception*

The trial court erred when it denied Stolz's motion to suppress the evidence found in his safe. As to the first basis prosecutors put forth to justify Sergeant Chesson's search—the "emergency aid exception"—the parties agree that "'police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury.' [Citation.]" (*Troyer*, *supra*, 51 Cal.4th at p. 606.) But "'"[t]here is no ready litmus test for determining whether such circumstances exist."'" (*Ibid.*) Rather, "'"in each case the claim of an extraordinary

3

situation must be measured by the facts known to the officers"'""" at the time of their search.  (*Ibid*.)

If a search is justified by the emergency aid exception, its scope is "'strictly circumscribed by the exigencies [that] justify its initiation.'" (*Mincey v. Arizona* (1978) 437 U.S. 385, 393.)  The officers may not, for example, continue their search once all of those who might require aid have been located. (*Ibid*.; see also *Troyer*, *supra*, 51 Cal.4th at p. 609 [search justified where officer "had no prior information indicating that only *one* victim was involved"].)  Nor will the presence of firearms in the home, without more, justify the search.  (*People v. Ovieda* (2019) 7 Cal.5th 1034, 1043 (*Ovieda*).)

Here, Sergeant Chesson received a report about a domestic disturbance between two people at Stolz's residence that contained no information about the use of a weapon.  As he approached the residence, Sergeant Chesson saw one person leave.  Another officer saw the second person inside.  Sergeant Chesson then received word that the person who had just left the residence—Stolz—had been detained.  Because the sergeant's search of the safe occurred after Stolz had been detained, after the potential victim had been located, and in the absence of evidence that firearms or other weapons posed a threat, it was not justified under the emergency aid exception to the warrant requirement.  (*Ovieda*, *supra*, 7 Cal.5th at p. 1043.)

The Attorney General's comparison of this case to *People v. Chavez* (2008) 161 Cal.App.4th 1493 is not persuasive. In *Chavez*, a woman asked a police officer to go to her residence to see if the vehicle her boyfriend had taken was there.  (*Id*. at p. 1497.)  She told the officer that her boyfriend had access to a firearm and that their son may be with him.  (*Ibid*.)  When the

4

officer arrived at the residence, he saw a revolver on the ground outside and scaled a fence to retrieve it. (*Ibid.*) Our colleagues in the Third District upheld the seizure of the revolver because the responding officer had information that the defendant had access to a firearm and had another person with him, and he saw the gun in plain sight. (*Id.* at pp. 1499-1503.) In contrast, here Sergeant Chesson had no information that a firearm was involved in the domestic disturbance; he had no information that anyone other than Stolz and the unresponsive woman were involved in the disturbance; and he saw no weapon in plain sight. *Ovieda*, *supra*, 7 Cal.5th 1034 thus controls this case, not *Chavez*.

*Protective sweep*

Alternatively, prosecutors argued that "an officer safety issue" justified the search of Stolz's safe. When responding to the scene of an alleged crime, police may perform a "protective sweep," a "quick and limited search of premises . . . to protect the safety of police officers or others." (*Maryland v. Buie* (1990) 494 U.S. 325, 327.) Such a search "is decidedly not 'automatic,' but may be conducted only when justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene." (*Id.* at p. 336.) Thus, to conduct a protective sweep, police must have "a reasonable suspicion *both* that another person is in the premises *and* that that person is dangerous." (*People v. Werner* (2012) 207 Cal.App.4th 1195, 1206 (*Werner*), italics original.) "The existence of such a reasonable suspicion is evaluated on a case-by-case basis by looking at the "'totality of the circumstances'"' to ascertain whether the police had . . . 'a "particularized and objective basis"' for [their] suspicion." (*Ibid.*)

Here, when Sergeant Chesson opened the safe, he knew that Stolz had been detained and that the alleged victim had been found. He thus lacked any particularized or objective basis for suspecting that any other person was at the residence or that that person was dangerous. The search of the safe was not justified as a protective sweep. (*Werner*, *supra*, 207 Cal.App.4th at p. 1209 ["""mere abstract theoretical 'possibility' that someone dangerous might be inside a residence does not constitute 'articulable facts'" justifying a protective sweep"].)[1]

DISPOSITION

The judgment is reversed.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

---

[1] Because we conclude that Sergeant Chesson's search of the safe was not justified, we do not consider the parties' remaining contentions.

6

Jesse J. Marino, Judge

Superior Court County of San Luis Obispo

_____

Sanger Swysen & Dunkle, Stephen K. Dunkle and Sarah S. Sanger for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah Hill and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.